We have four argued cases this morning. The first is number 24 of 1600, Haifman v. Google. Mr. Hadley. Thank you, Your Honor, and may it please the Court. Ms. Haifman's appeal raises three issues. I'd like to focus my time this morning on the implicit construction and the Ginni patent issue. The board did construe the claim language at issue, and that warrants de novo review. The board did so implicitly, if not explicitly. And that is the limitation of initiating. Did you ever argue to them that the without assistance of a user meant no assistance except for turning on the power? Yes, that was argued during the, at the very least, in the papers. In the response to the petition? In the patent donor response, it was argued that the Ginni patent did not meet the limitation. That's different than a claim construction argument. We did not ask for an explicit claim construction, and neither did the petitioner. So you've got the plain language without the assistance of the user. The board looks at it and determines that the prior art does it without the assistance of the user, because the user may have to turn it on, which even you agree is OK, and connect it to the internet. But it doesn't actually require the specific assistance to carry out the specific steps that's referred to in that paragraph. Why isn't that all substantial evidence for you? Because what the court, this court has said that if during the proceedings, in order to reach a decision, and this is the Google versus Ecofactor case. No, but the problem is we do that when it's clear that there's a dispute of scope, and the board should have been on notice. You didn't put the board on notice that you thought without assistance of the user met some assistance, but not too much, which is essentially your argument. And so the board looked at this and said, well, without assistance of the user clearly can't mean zero involvement, because somebody has got to do something with the device for it to be able to do the other steps. And it found that turning it on and connecting to the internet was still not violative of the step. If you would argue to them that the claim should be limited to the only assistance can be turning it on, then they would have had to confront that. And they did confront it. We did point out in the response that in figure three, in the context of addressing Jenny, that figure three says you turn on the computer and then the user has to do nothing else, zero. And we also pointed out that that language was added during the file history to overcome Broyles. And then in the argument and in the papers and in the final written decision, what the board did was actually perform a claim construction. It did everything that a tribunal does in determining what a term means. It looked at the claim language. It looked at the specification. And it looked at the file history. And it also cited this court's precedence on claim construction. And it actually reached a claim construction. It said that without, it said that it did not view the claim term without assistance of the user as prohibiting user interactions besides. Well, you agree that it doesn't prohibit all user interactions, right? Correct, because the specification does make clear that you at least have to turn on the power. If you don't turn on the power, then nothing happens. But then the specification also goes on to say that the return and recovery information then appear during the boot up process before the user logs on or takes any other action. And that's the whole point of the invention. So I want to ask you, so your position is that the board construed the term incorrectly? Correct, the board construed the term incorrectly by misreading and misapplying both the claim language, the specification, and the file history. So we have to agree with you first that a claim construction actually occurred. And then we have to agree with you that the board's claim construction was incorrect. Yes. And the reason that the board's claim construction was incorrect is that first in terms of the claim language, the board characterized logging on and establishing a remote connection as, quote, an unrecited action. But it's not unrecited. But you can't update what's in the computer without logging onto the internet, right? That's the whole invention. You can, the invention itself combines. How can you update without logging on, into the internet? The patent explains how you do that. Well, how do you do that? At column, at column two, line 23 through 30, it says that the invention doesn't rely on the computer modem. What appendix are you looking at? Appendix 125. Thank you very much. And it says that the present invention uses a layered program that's first of all put on the hard drive as opposed to someplace else. And it's a layer. I'm not sure the original program's on the hard drive, but how can you update it without being connected to the internet? Because what the retriever program, the invention does, is that during the boot up process, the computer program looks for a network or a connection and it automatically makes the connection if it's available. Well, you have to be connected to the internet. So the answer to my question is yes, you have to be connected to the internet to do the update. You have to be connected, but the user doesn't have to do anything to connect. That's the whole point. Did they say that the user doesn't have to do anything, even in column two where you're directing us? Well, that's actually in the claim language itself. The last limitations, the fourth limitation makes clear, first of all, the second limitation says without assistance from the user. I know, but it says without assistance by the user in connection with other things. What it says, without assistance in connection with initiating or changing the return recovery information. And we've made it clear, you've made it clear that turning the computer on is not part of that. So it's kind of hard to know where it starts and where it doesn't, this initiating or changing the return recovery information. It starts before the logging on to the device. So everything happens that the- So without assistance by the user requires without turning on the device. No, it requires turning on the device, but the assistance- Everything after that. The assistance begins- How do you get the internet connection without logging on? At the time of this patent was dial up internet. Where does this say that you get an internet connection without logging on? It says you get a connection. Again, this is- Where, parent line, column two, line one? Column two says that the- Line, line- Line 23. The present invention does not rely on the use of the computer modem. Instead, it uses a layered program in the boot up process. That's how it works. The problem is, let me just back up. I want to repeat my question, okay? So the claim says changing return information without assistance by user. And so that's the big question is, what is changing return information? How many steps fall within that? You say turning on the computer doesn't fall within that, but you say connecting to the internet does. I want to know where in your specification it makes that distinction clear. It makes it clear in two places. Actually, in the claim language. First- Okay, I'm going to listen to you. If it's just without assistance by user, that's going to be a little too vague. First of all, the claim language that we're looking on doesn't just say initiate or change the return information. It says initiate or change the return information through remote communications without assistance from the user. Without assistance from the user applies to not just changing or initiating the return information, but also remote communications. You can't do something through remote communications- But it also says initiating or changing return information, which appears on the display through remote communication. Correct, and then- Okay, so maybe through remote communication is modifying which appears on the display. But then the fourth limitation says that that very display that has to appear without assistance from the user through remote communication does so before or with the security prompt, which prevents the user from accessing operatively the computer. To establish an internet connection or any other type of remote connection, that is accessing the computer operatively. You have to access and operate the computer. Did you have expert testimony explaining how you could connect with the internet without a logon? We did. Where's that testimony? That was in a declaration that was cited during the trial, and it was also in the testimony. Okay, but where is it in the record? What point? I'm having difficulty understanding how, at this time, you could connect to the internet without logging onto the computer. And I don't understand that, and this doesn't seem to me to say that you can do that. If you had a declaration from an expert saying that was possible and how it was done, I'd be interested to see that. Where is it? It's explained in the specification in a number of places. I don't see it explained in the specification. It says you don't have to use the modem, but that's true with respect to the original thing loaded onto the hard drive. But for updates, I don't understand how you can do this without using the modem. You do it by putting the program into the hard drive in a layered manner, and then what that does... You keep saying layered. What does that mean? That program is still connecting to the remote server via something, right? Exactly. At this time, it was dial-up, so that's the way it connected. Exactly, it connects, but the point is not that it, whether it connects or not, it definitely connects. The program worked. How do you get a dial-up connection without logging on? Because the program looked for the connection and established the connection automatically. Show me where your expert said you could connect to the internet without a dial-up connection after logging on. Our expert pointed to places in the specification, and I don't have... Identify those? Like, for example, one of the problems I think you have with your construction is the language at column 14, line 30, and what that talks about is it analogizes the invention to being like McAfee antivirus software internet updating capability where every time you go online, your computer automatically checks to make sure you have the most recent current antivirus software. Okay, so, you know, that's making clear that every time you go online, if that's the analogy, every time you go online would be, you know, you would go ahead and update what the prompt screen's gonna say. Exactly, and what it says is that that is how you download the initial program, the retriever program, or you upload it. But then it goes on to say that that's not the invention, that that is the prior art. Everybody agrees that that's the prior art. And then what it goes on to say is that the... This isn't column 14. But maybe you should walk us through these places in the specification that make it clear that this without assistance by the user would include that the user does not sign on to the internet. Exactly where we are reading. Where did your expert analyze the specification and say that it doesn't require logging on? I don't have the exact paragraph in the record. If you don't have the exact paragraph, I'm gonna assume there's no such paragraph. But if you look at the language, it goes on to say that you take that existing technology and combine it with the retriever program. Column and line number. Yes. That's the way you're gonna be most convincing on this. At column 14, line 34 through 40, it says nobody has ever considered to design a product combining this type of communication, the McAfee and the PDA synchronization with the ability of this type of recovery security program that's talked about in the specification, that's the retriever program, that seizes control of the display monitor until a security prompt is satisfied. And that's where it makes clear that the user doesn't have to do anything like log on. The user doesn't have to do anything except for updating. When you can't update without the user logging on because that requires an internet connection. The original display is loaded onto the hard drive and doesn't require an internet connection, but the updating does. That's the problem. It requires an internet connection, absolutely, but what it doesn't require is for the user to log on and to physically make that connection because it would defeat the entire purpose of the invention. The invention doesn't allow. Are you just saying that it logs on automatically when the user turns on the computer? Yes, during the boot-up process, this retriever program runs and it logs on to whatever connection is available. Now, granted, there has to be a connection available, but it does log on. I don't see how that's without assistance of the user. The user is the one turning on the computer that then causes everything to run. But as the patent explains, if the user had to log on, the user would have access to everything on the computer before connecting to the internet and it would defeat the entire purpose of the invention. Where does it say that the user cannot log on to the internet or it will defeat the purpose of it? Among other things, the fourth limitation of Claim 1 says displaying the screen with the return and recovery information with or before a security prompt, which prevents the user from accessing operably the computer. And that's the claim construction. Now, if the expert or the patent doesn't explain how to do that, that may be an enablement issue, but that is separate from claim construction. The board could certainly look at it and say, okay, this isn't enabled, but that doesn't affect how this court should properly construe the term. Unless my colleagues have questions, you're out of time. Here, we'll give you two minutes for... Ms. Nguyen, were you gonna go first? How are you dividing your argument? Your Honor, five minutes for my time. Pardon me? Five minutes for my time. No, but in terms of subject matter. I'm sorry, Your Honor, so the USPTO has only intervened on the question of the reviewability. That's the intervention.  Good morning, Your Honors, and may it please the court. Shella Nguyen for the director of the USPTO. This court may not review the board's denial of Ms. Hageman's request to deinstitute these IPRs. That denial has instituted institution as its direct, immediate, and express subject, and it is final and non-appealable under section 314B. Even if this court disagrees on reviewability, the board would... Doesn't our recent decision in ethanol control this issue? I'm not sure, Your Honor. You didn't submit a 28-J letter on this. I don't think you should have. We just decided a case within the last month that said, you know, where they, the patent owner argued that because the PTO violated its own rules or did something ultra-virus, it should have been deinstituted, and we said that's not reviewable. If that's the case, that controls this, doesn't it? It's the same type of argument. Without the benefit of reading that decision closely, Your Honor, I can't say whether it... It's in your favor. If it wasn't clear... I want to say, I just, I'm not sure what the facts there are, but yes, I think... Well, the facts there are what I told you. The patent owner said the board unlawfully stayed its institution decision, that it couldn't, and therefore, it was ultra-virus, and we should order deinstitution, and we said we can't order deinstitution. And the error here is maybe similar, but it's still something we can't order, right? If he's asking for deinstitution, he can't get it. Correct, Your Honor. And this court has held repeatedly in many cases, even on reconsideration. This is in the Medtronic case, even after a final written decision. This court may not review the director's exercise of discretion to institute. If the court has any other questions, I'm happy to answer them. Okay, thank you. Thank you, Your Honor. Mr. Belucci. May it please the Court, on behalf of the appellees, I'll address the claim construction issue. It's true, there was not an express requested claim construction. The board at page seven of the final written decision enumerates all of the claim terms that the parties sought construction for, about half a dozen, and it was not the without assistance. So for that term and any other term that parties did not request an express construction, the board applied the plain and ordinary meaning. And in applying that plain and ordinary meaning. What is the response to the argument that they also looked at the prosecution history and they also looked at the specification, like they were in detia of a Phillips analysis, so therefore it was a claim construction? Sure, the board did cite Vitronics, but for the uncontroversial proposition that when there's a preferred embodiment in the specification, presumptively that's somewhere within the scope of the claim. But the board did not say or delimit the outer boundary of that. So that's how I would address that. Now, Vitronics is a claim construction case, but the Ecofactor case, which is the main case on point for an implicit construction, doesn't say that merely citing claim construction precedent triggers an implicit construction. Rather, the board relied on these cases to determine the scope and meaning of the claims. So, but that's not what happened here. The board was performing a factual comparison of the GINI updating feature to the preferred embodiment. And that's very much like what the board did in the Apple versus Unilock case that we discuss on page 34 of the red brief, which this court held was not an implicit construction, that was a factual comparison. And I think, of course, the APJs are very smart. And if this panel says merely citing a claim construction case is going to result in an implicit construction, and we can review that de novo, I think the APJs will stop doing that. But that would be unfortunate because I think we want- Can I ask you? Yes. I hear what you're saying, but my question was just a little bit different than what you're addressing. I was concerned about the discussion of the specification and the prosecution history, not the mere citation of the Vitronics case. Yes. But there's an actual discussion of those things. So what is the distinction between claim construction and factual analysis when the intrinsic evidence is the thing that's being discussed? Yes, and in Ecofactor, the court said it is the setting of the scope of outer boundaries, whereas here we're looking on the internal, inside the scope of the claim, and not resolving where that outer boundary might be. So the court was looking at- There's a lot of cases, I don't want to get off, because I'm sure you also have an argument that that claim construction is correct. But my other, there's a number of cases where we have also said very clearly that the court does not have to resolve the entire meaning of a claim term. They're just to resolve as much as they need to to resolve the dispute between them, whether you're at issue in the case, whether it's invalidity or infringement. And so I'm not sure that I'm following your distinction there. Right, and indeed, that was the case law on page eight of the final written decision. That is, we only need to construe the terms in controversy and only to the extent necessary to resolve the controversy. The board was not resolving the outer boundary. That's the way claim construction is. That can be a claim construction, regardless of whether you say, this is what it means for all intents and purposes in all cases ever in the future, versus we are resolving what this term means for purposes to resolve the dispute in this case. I don't see how that makes something a factual analysis versus a claim construction. Right. Does that make sense? Yes, but I think I go back to the eco-factor. It's the outer boundary, the limit of where the claim term is. Where does the permissible user action end and impermissible user assistance begin? We don't know where that line is, and it's that boundary that eco-factor says is important. The board here just safely said, presumptively, this user assistant, the automatically checking for updates anytime you go online in column 14, that's a species within the claim. Okay, I think, unless Judge Stoll has further questions on this, you should turn to treating this as an issue of claim construction. Why does the board get it? Right, and this is a very easy claim construction case on the merits. I think you need to look no farther than the specification statement of a phone line and cable in columns 13 and 14, which the user would be the one plugging in that cable to establish the internet connection. And in patent owner's reply at page 19, it pretty much gives up the ghost on this claim construction issue when they acknowledge this argument about the phone line and cable and say that these are exemplary ways. The claims are not limited to cable-based communication, so they're not disclaiming the use of a cable or a phone line. And in fact, so the question is, who is the one that makes that internet connection? Can it be the user? We say yes. What they say on page 19 of their gray brief is that even for the phone line and cable examples, the computer could still be connected by the owner and not the user. But notably, they need to say must here, that it must not be connected by the user, but that flies in the face of the patent when that listing of all of the phone line and cable. You gotta help me, because I'm not clear about what's going on here. Are you agreeing that you could have an internet connection without a logon? No, you need to have that internet connection for this to work. Well, you do have to have the internet connection, but does that require a logon? It could. I don't know if it requires a logging in. So back in the day, in the 2002 timeframe, you would normally through the AOL log in to establish the, to go online via the phone line. How could you get the internet connection without doing that? Certainly the patent doesn't say that that's possible. And in fact, so when we have that listing of the phone line or cable or Wi-Fi, Bluetooth, in column 13, one sentence before that is the mention of the disgruntled employee. So it's appendix 131, column 13. What's the phone line? 53. 53 is the phone line or cable, Wi-Fi, Bluetooth. So that's how we all agree the internet connection or the remote connection of the claim can be established. So, but the question is who is making that connection? Can it be the user? Yes, of course, because one sentence before that says this is an important feature in case the assigned to person is a disgruntled employee who simply reports equipment as stolen and is still using the equipment. So that disgruntled employee is the user in the claim. He's absconded with the laptop, taken it home or to another location, and will most logically be the person who's connecting the phone line or cable to establish that internet connection. Now as for the expert testimony, indeed, there was none by patent owner on this point about the genie and the, without assistance. And the relevant pages in the, just for the record for the patent owner response was Appendix 8184 through 8186. That's their patent owner response where they would have needed to put at site an expert for this argument. And there is not a single citation to an expert declaration. And the board also on page 22 of the final written decision factually disagreed with the proposition, the attorney argument by patent owner that you could just, as anyone knows back in 2002, you can just open your phone and it would automatically go online. The, as a factual matter, the board rejected that, found there was no evidence of that. And then the blue brief on appeal doesn't dispute that. Yeah, so if there are any other questions on the claim. Where does the board say that? Pardon? Where does the board say that? Okay. Appendix 22, the first full paragraph addressing patent owner's argument. As anyone who has turned on a cell phone can attest, a connection can be established automatically without any involvement by the user. The user simply turns on the device. And there, as reviewing the expert testimony of our expert on cross-examination, who is Dr. Zadok, the board factually disagrees with this. Patent owner does not direct us to any evidence that iPhones or other smartphones, to the extent they even existed at the time of the invention, 2002, had such capabilities in 2002. Okay. Finally, and then, yes, Judge Stoll, you're correct that you would get only to the genie arguments on appeal if both you would have to find that there was an implicit construction and adopting patent owner's proposed construction. Thank you. Okay, Mr. Hadley. Three quick points, Your Honor. First, in terms of how this works without the user taking action to log in and connect, the claim language without assistance was added during prosecution. And during the prosecution, the patent donor explained how this worked. The appendix sites are at 141 through 143, 3061, 3065, and 3083. And that's where the patent donor provided the support for without assistance from the user before passing a security prompt and logging in. Second, in terms of phone lines and cables, yes, the specification does refer to that, but that doesn't make the connection. That simply provides the conduit for the connection. Even back then, the owner still had, or the person with the device still had to pass a security prompt and log in to make that connection through the available cable and phone line. Again, the specification explains that and makes that clear. So without assistance by the user doesn't just include turning the computer on. It also includes plugging it into a phone line or something. If that's okay. If that's the way it's going to work. The plugging into a phone line or a cable is akin to plugging in the power. And certainly, if you don't plug something in, if it's dead or you have to have a modem, the specification talks about updating through a modem and says that the user doesn't have to log in to update through the modem. And then, and so, yes, plugging in to a cable or a phone line is the same as plugging in power. The whole point of the patent is stopping the user from logging in to access the content of the computer until the user has at least seen that the computer is lost or stolen and the return or recovery information. That is the invention. And then finally, in terms of the Soterra stipulation, the patent owner is not asking for this court to de-institute. Instead, under Unilock or Facebook, we're simply arguing that the violation, the stipulation should have been addressed in the final written decision. And what would you have them say if they addressed it? What we would have them say is that after institution, after we instituted, based on the Soterra stipulation, that the petitioners, which includes LG, violate, as a real party and interest, violated the stipulation and deny the, in the final written decision, deny the recovery that the petitioners were seeking based on the violation. On what basis? On the basis of the violation of the Soterra stipulation. Where does it say they have the statutory authority to do that? The statutory authority. Once they've instituted, they've got to decide whether it's unpatentable or not. They, under the CFR, there is a provision that allows the patent, that allows the patent office to decide a matter short of a trial or during the trial based on a violation. So for example, if the, if during the trial, what do they do when they do that? They dismiss the IPR. They dismiss the IPR. But that's different from de-instituting the IPR. So for example, if during the trial, the patent office. That sounds like the same thing to me. It's a little bit different because if, for example, if during the case, during discovery, it's found that the petitioners are not the real parties and interest, for example, then the patent office has the authority to dismiss the matter, even after institution. Well, the patent office can do it, but we can't review that. Under the, in fact, that's pretty close to the Unilock versus Facebook case where the court, this court did find that it could review that. Find it reviewed what? Review taking action as to the matter after institution based on something that comes up during discovery. For example, in the Unilock versus Facebook case, the issue was the scope of estoppel. And this court found that it had the. That's different. We can review scope of estoppel on anything because it relates to the unpatentability question. The ultimate goal you're seeking in this case is to have the IPR dismissed, which is essentially de-institution. To have, yes, to have it dismissed. You can't do that. I think that the Unilock case gives the court that authority. But I agree that this has not been. There was, in fact, no satiric violation here because the district court was applying the wrong law and concluding there was. And in Jenica, we decided to adopt the other line of authority. The facts there were a bit different. Here, what the court looked at was that the. No, the court got it wrong. I mean, you can try to argue that. It's not before us. It came up in the district court. We would reverse because Jenica was controlling here and they didn't violate the satiric stipulation. The district court may have not had the benefit of our Jenica case, but now that it's issued, it demonstrates that the district court's wrong. I agree it's the prior art. Under the priority date issue, the exact same argument was raised in the district court as it was in the IPRs. The exact same issue. And that's what the district court denied the summary judgment. Okay, we're out of time. Thank you. Thank all counsel, the case is submitted.